JODI LINKER
Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone: (415) 517-8647
Facsimile: (510) 637-3507
Email: John_Reichmuth@fd.org

Counsel for Defendant WILLIAMS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRAD WILLIAMS,<br><br>Defendant. | **Case Nos.:** CR 26–118- HSG, 18-547- HSG<br><br>**SENTENCING AND VIOLATION MEMORANDUM ON BEHALF OF JERRAD WILLIAMS**<br><br>**Court:** Courtroom 2, 4th Floor<br>**Hearing Date:** August 19, 2026<br>**Hearing Time:** 2:00 p.m. |

Mr. Williams has accepted responsibility for possessing a firearm. He pleaded guilty to a violation of 18 U.S.C. § 922(g)(1) in case number 26-118-HSG and will admit Charges One through Three of the pending violation petition. On that basis, his term of Supervised Release will also be revoked in case number 18-547- HSG. The parties jointly recommend a total custody term of 42 months, followed by a new 36-month term of Supervised Release. This represents a sentence of 18 months on the conviction for 922(g)(1)[1] and a sentence of 24 months consecutive on the revocation.[2]

---

[1] The guidelines for the new conviction are not in dispute: they are a Total Offense Level 12 and a Criminal History Category V, which produces a range of 27-33 months incarceration. U.S.S.G. § 5A.

[2] The guidelines for the supervised release violation are not in dispute: they are a Grade B violation

The Probation Office recommends 27 months prison for the new conviction consecutive to 24 months prison for the violation, for a total of 51 months prison. The parties' joint proposal of 42 months prison represents a 9-month variance from the guidelines (and from the Probation Officer's recommendation) for the new conviction. This proposal fulfills the goals of sentencing. Though Mr. Williams's recidivism has been disappointing, especially to Mr. Williams and those who love and support him, there are good reasons to attempt supervision again after a multi-year prison sentence of 42 months: Mr. Williams, who is now 40, was making strides in his life, parenting and trying to work. He has a good support system in place. His new conduct was just shy of the termination of his Supervised Release. He rapidly accepted responsibility for this offense and resolved this case. And significantly, the government joins in the 42-month recommendation, which includes a maximum prison term for violation of supervised release.

**A. Mr. Williams's Struggles and Hopeful Release Plan**

Mr. Williams has a deeply traumatic past: At the age of six, he watched his father kill a man during an argument. At around this same time, Mr. Williams' father abandoned the family after severely assaulting Mr. Williams' mother. PSR ¶¶46-47. Mr. Williams also struggles cognitively. He has an IQ of 82. This results in "poor verbal skills" and "lack [of] intellectual resources." He is also limited in his "problem solving and decision making" abilities. 2019 PSR ¶ 60. Perhaps related to this, he developed a severe and early Substance Use Disorder. He became a heavy marijuana user between the ages of 12 and 18, an alcoholic between 14 and 20, and later a cocaine base and powder cocaine addict. PSR ¶ 61. There is some reason to believe that Mr. Williams may live with bipolar disorder. PSR ¶ 58. Limited employment has plagued him, though he has held jobs for more than a year at a time. PSR ¶¶ 66-67. In sum, Mr. Williams's challenges are real and significant.

Mr. Williams is certainly capable of doing well, however, and the cornerstone of his future progress is his release plan. The Probation Officer conducted an interview of Mr. Williams's fiancée Gabrielle and a virtual home inspection. PSR ¶¶ 52, 54. She lives in a three-bedroom home that appears appropriate for supervision. Gabrielle notes that Mr. Williams had completed a job program

---

and a Criminal History Category VI, which produces a range of 21-27 months incarceration. U.S.S.G. § 7C1.5.

and was working odd jobs, but he had not secured real employment. She notes the importance of Mr. Williams to her household, including her children, and intends to support him throughout his incarceration and help him live a prosocial life once released. Crucially, Mr. Williams has not been using drugs in the last few years. PSR ¶54. He had housing, some sobriety, parenting, some employment, and a healthy relationship. This setting had helped Mr. Williams make strides and almost complete supervised release. A release plan incorporating many of these same factors, with a greater focus on mental health and employment will likely yield success.

**B. A 42-Month Prison Sentence is Appropriate**

Under federal law, every day of incarceration must be necessary. The court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory, and the Court has a duty to exercise judgment and discretion in arriving at a sentencing determination. The Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). A sentence of 42 months prison, followed by 36 months of Supervised Release, with intensive cognitive behavioral therapy, would best fulfill the dictates of § 3553.

Mr. Williams requires structure and intensive programming to help him deal with the extreme violence and instability he has experienced in his life. Though he has an ACEs score that appears low, it is clear that his score does not capture the extent of the trauma and chaos that he experienced. Indeed, science is now recognizing the damage caused by "expanded ACEs,"[3] which include trauma outside the home, such as community violence. Mr. Williams was a habitual drug and alcohol user as

---

[3] Cronholm PF, Forke CM, Wade R, et al. Adverse childhood experiences: expanding the concept of adversity. Am J Prev Med. 2015;49(3):354–361.

a child who watched his father commit a homicide. He used cocaine base for years. It is certainly likely that he carries neurological, physical, and psychiatric effects of these experiences. His poor mental and physical health are very likely tied directly to these damaging influences. In one study, someone who faced four ACEs was "460 percent more likely to suffer from depression than someone with an ACE score of 0."[4] Mr. Williams has significant issues and a history of frustrating recidivism. With his increasing age, his release plan, and awareness of his therapeutic needs, supervision can succeed without a prison sentence in excess of 42 months. Mr. Williams should be assessed for mental health treatment and considered for a collaborative court upon release, so the benefits of his prosocial release plan can be maximized through increased structure and treatment.

Based on the foregoing, Mr. Williams respectfully requests that he be sentenced to 42 months prison (18 on the new indictment plus 24 on the revocation), followed by three years of supervised release (on the new indictment only).

Dated: August 12, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender

/s/

JOHN PAUL REICHMUTH
Assistant Federal Public Defender

[4] Felitti VJ. The Relation Between Adverse Childhood Experiences and Adult Health: Turning Gold into Lead. Perm J. 2002 Winter;6(1):44-47. doi: 10.7812/TPP/02.994. PMID: 30313011; PMCID: PMC6220625.